Dickman, J.
This is an application by the relator, Charles W. Dustin, an elector of Montgomery County, for the allowance of a writ of mandamus against Joseph E. Kinninger, deputy sheriff of that county, to compel him to give notice and issue a proclamation according to law, in the name of the sheriff, who is beyond the jurisdiction of this court, for the election of a common pleas judge of the second judicial district, in the second subdivision thereof, at the election to be held on the fifth day of November, 1889. By Article XI, Section 12, of the constitution, under which the state is apportioned for judicial purposes, it is provided that, “The counties of Butler, Preble, and Darke, shall constitute the first subdivision; Montgomery, Miami, and Champaign, the second; and Warren, Clinton, Greene and Clarke, the third sub-' division, of the second district; and, together, shall form such district.” By section one of an act passed March 13, 1868, “To change the subdivisions in the second judicial district, and to provide for the election of an additional judge in the first subdivision,” (65 Ohio L. 25), the counties of Butler, Preble, Montgomery and Darke are made to constitute the *571 •first subdivision; and Champaign and Miami, the second subdivision of the second judicial district. On June 12, 1879, •an act was passed, to provide for the election of an additional judge of the court of common pleas in the second subdivision of the second judicial district (76 Ohio L. 156); the first election of such additional judge to be on the second Tuesday •of October, 1879; his term of office to commence on the first Monday of November, 1879, and to continue five years. With the view of effecting a change in the first subdivision, and of restoring Montgomery County to the original second • subdivision of the district, an act was passed March 21, 1887, (84 Ohio L. 229), enacting, that section one of the above entitled act, passed March 13, 1868, be repealed.
By virtue of the aforegoing legislation, it is claimed by the relator, that Montgomery County is now in the second subdivision of the second judicial district, and that the deputy .sheriff should be commanded to give the notice, and issue proclamation for the election of a judge, as asked in the petition. The answer of the defendant denies that Montgomery County is a part of such second subdivision, but avers that it is a part of the first subdivision. It alleges that the law under which the change is claimed by the relator to have taken place, to-wit: the law of March 21, 1887, to repeal ■section one of the act of March 13, 1868, was not passed by a concurrence of two-thirds of the members elected to each house, but by a majority only of the members elected, as shown by the journals of the house and senate. To the .answer of the defendant the relator has filed a demurrer. The ■record presents the question, whether the act of March 21, 1887, was passed by a constitutional majority, and furthermore, whether after there has been a change by a two-thirds vote of each branch of the general assembly, from the judicial apportionment provided by Article XI of the constitution to :a new legislative apportionment, there may be a change from •such legislative apportionment to one different from that designated in the constitution, or to the constitutional apportionment itself, without the concurrence of two-thirds of the .members elected to each house.
*572 It is evident that the apportionment for judicial purposes, was not designed to continue without change or modification,, during the life of the constitution. With the increase of population, and the formation of new counties, it was contemplated, that the districts of the court of common pleas might be increased and changed, and the subdivisions thereof changed, to meet the public convenience, and facilitate the efficient administration of justice. As provided by section 15, Article IV of the constitution, “ The general assembly may increase or diminish, the number of the judges of the supreme court, the number of the districts of the court of common pleas, the number of judges in any district, change the districts, or the subdivisions thereof, or establish other courts, whenever two-thirds of the members elected to each house shall concur therein.” The concurrence is required, it will be observed, not of a quorum, but of two-thirds of the members elected to each house of the legislature. But while changes' were contemplated, this section wisely ordains, that the constitutional scheme of judicial apportionment shall not be subjected to the will of bare majorities, whether partisan or otherwise, whereby the judicial system may lose stability, and be-weakened in its hold on the public confidence. And this policy has been uniformly adhered to since the adoption of the-constitution. In changing the districts of the court of common pleas, or the subdivisions thereof, it has been generally recognized by the legislature -as the established constitutional-rule, that such change could not be effectual, without the sanction of a two-thirds majority.
In our judgment, when the judicial subdivisions marked out in Article XI have been constitutionally changed, the new apportionment becomes a permanent substitute for the original, until again changed by the concurrence of two-thirds of the members elected to each house of the general assembly. When the judicial apportionment named in the constitution is-once changed, in whole or in part, in the manner provided by the instrument itself, the new arrangement is determined and fixed until altered by the prescribed rule. What is that rule ? It is plainly laid down in section 15, of Article IV, above- *573 •cited. Without ambiguity, the legislature is thereby authorized to change the subdivisions of the several judicial districts— the number of subdivisions in each district being preserved— whenever the requisite number of members assent to the change. A judicial apportionment having been made, which, in the future, might demand revision or alteration from time to time, the constitution has left it to the wisdom and discretion of the general assembly to incorporate with it the needed changes, but has provided a safeguard in the requirement of a two-thirds majority, as it has required that either branch of the general assembly may propose amendments to fundamental provisions of the constitution, only when the same shall be agreed to by three-fifths of the members elected to each house.
It is contended, however, in behalf of the relator, that although the act of March 21,1887, to repeal section one of the .act of March 13, 1868, was not passed by a majority vote of two-thirds, yet, that the act restores Montgomery County to the original second subdivision, and thus leads the way back to the normal or constitutional condition, and hence should not require more than a mere majority vote. But, to repeal section one, by a majority vote merely, would, in our view, be to change in plain violation of section 15, Article IV of the constitution, the subdivisions of the second judicial district, the first subdivision of which, composed of Butler, Preble, Darke and Montgomery counties, has stood for more than twenty years. The first subdivision as now constituted, it is to be presumed in the case at bar, was created by the concurrence of the requisite number of members elected to each house of the general assembly, and to destroy its unity, would certainly be a change of the most marked and decided character. The question is asked, what would become of Montgomery County, were section one repealed even by a majority vote of two-thirds, but with no further legislative action, if that county were not allowed to take its original place in the constitutional arrangement of judicial subdivisions. Such a case is not before us for consideration. But, it is not to be anticipated that the legislature would ignore its trust, or abandon *574 its functions, by failing or neglecting to assign that county to-some other judicial subdivision.
The provision of section 15, Article IV of the constitution,, for changing judicial subdivisions, is intended to be uniform in its operation. But, such uniformity will not be attained by 1. iding, that in a change from the constitutional apportionment a vote of two-thirds of each house shall be necessary, but shall not be necessary in a change from a judicial apportionment by the general assembly, in the event that such change would work, u return to the original constitutional arrangement. There is not such inconsistency or incongruity in the operation of section 15, as that one judicial subdivision can be changed only by a majority vote of two-thirds, while a, simple majority vote shall be adequate to change another subdivision.
We find nothing in the case of State v. Wright, 7 Ohio St. 333, cited in argument, that militates against the views which we have presented. In that case a clause of section 15 of Article IV of the constitution came under consideration, and it, was decided that, the constitution of' the state has not limited the power of the general assembly to abolish courts created by the legislature, nor its power to vacate the office of judges of such courts. But the case also recognizes the doctrine, that courts established by the constitution itself exist independently of the general assembly, and can not be abolished by it. In-applying to the case in hand, that portion of section 15, which provides that, the general assembly may “ establish other courts, whenever two-thirds of the members elected to each house shall concur therein,” Brinkerhoff, J., says : “ It is not difficult to conceive of very good reasons why the constitution should require a vote of two-thirds for the passage of an act establishing a new court, increasing the number of public functionaries, and possibly adding thereby to the public burdens, while the repeal of such act might be safely confided to the discretion of a simple majority.” It is obvious, if the act repealing the-law that established the new court, had been enacted for the-additional purpose of establishing another court in its place, a less number of affirmative votes than two-thirds of each house. *575 would have been insufficient for its passage. And so in reference to the constitutional rule that, subdivisions of judicial districts can be changed only when there is a concurrence of two-thirds of the members of each house, although generally it is sufficient for the enactment and repeal of laws if a majority of the members elected to each house concur, yet, when, the design and effect of such repeal is, clearly, to change judicial subdivisions, the constitutional requirement of a two-thirds majority vote must be paramount,- and govern the action of the-general assembly. The rule of two-thirds having been expressly enjoined by the fundamental law, it can not be dispensed with by the legislature.

Writ refused.